Carl D. Crowell, OSB No. 982049
email:  carl@crowell-law.com
Drew P. Taylor, OSB No. 135974
email:  drew@crowell-law.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **COBBLER NEVADA**, **LLC,**  <br><br>              Plaintiff,<br>v.<br><br>**USERS OF POPCORN TIME, et al,**<br><br>              Defendants. | Case No.: 3:15-cv-01991-ST<br><br>PLAINTIFF'S EX PARTE MOTION TO EXPEDITE DISCOVERY<br><br><br>EXPEDITED RULING REQUESTED |

LR 7-1

Plaintiff does not know the identity of the defendants, and as such is unable to confer.

Notice of Related Proceedings

This case is one of a number of related cases filed in this District, each with the same general allegations against different defendants, who have each participated in the BitTorrent piracy of plaintiff's motion picture.  This case, though related, is distinguishable in that each of the defendants participated though the use of software called Popcorn Time.  All other related cases are before Judge Stewart, a lead case generally designated as 3:15-cv-01550-ST.

///

**PLAINTIFF'S *EX PARTE* MOTION TO EXPEDITE DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 26 and 45, plaintiff moves the Court *ex parte* for an order permitting plaintiff to take limited discovery to ascertain the identity of the defendants in the complaint. Limited discovery prior to the Rule 26(f) conference is necessary as per the reasons stated in the accompanying Memorandum of Law.

Plaintiff respectfully requests the Court grant its *ex parte* Motion for leave to take discovery prior to the Rule 26 conference and enter an Order allowing plaintiff to subpoena records from the Internet Service Provider ("ISP") used by each defendant for the identity of the subscribers and account holders assigned each Internet protocol ("IP") address, and for such further information as may be needed to specifically identify the Doe defendants.

Plaintiff requests an expedited ruling on this matter as it is likely the defendants are actively and currently participating in the piracy of content through the continued use of Popcorn Time and any delays are likely to increase the harm suffered by plaintiff and others.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* MOTION TO EXPEDITE DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 26 and 45, plaintiff requests limited expedited discovery prior to the Rule 26 conference to ascertain the identity of the Doe defendants as identified in the complaint. Dkt. 1, Complaint; Dkt. 1-1, List of defendants.

## I. INTRODUCTION

Cobbler Nevada, LLC is the registered copyright owner of the motion picture *The Cobbler*. Each of the Doe defendants is a user of the Popcorn Time software platform who downloaded, installed and used a version of the software to both view and then re-distribute

plaintiff's motion picture to others. Dkt. 1, ¶¶ 28-32.  Each of the users was provided multiple warnings and notices that their conduct was for the express purpose of copying and then re-distributing copyrighted content to others. Dkt. 1-2, Popcorn Time Notice; Dkt. 1-3, Popcorn Time FAQ; Dkt. 1-4, Popcorn Time Terms of Service.

Popcorn Time is a unique BitTorrent vehicle as it exists for one reason only: to facilitate the theft of copyrighted content. The Popcorn Time web site (www.popcorntime.io) makes this clear. Dkt. 1-2; Exhibit 2, ("Downloading Copyrighted Material May Be Illegal In Your Country.") A quick search online reveals a number of articles to this effect with titles such as, <u>Piracy-powered video streaming platform Popcorn Time is a major threat to Netflix</u> – Financial Post, and <u>Hollywood Faces Grave Threat From Popcorn Time</u> – Forbes.  Popcorn Time promotes itself and is distributed in a manner that invites the most causal of Internet users to enter the world of online theft and piracy with its ease of use and friendly logos.  Plaintiff's investigator has recorded over 10,000 instances of distribution of its motion picture from locations in Oregon, a fact well known to users of Popcorn Time as it is well known that the chances of getting singled out and caught with so many infringers is miniscule.[1]  The users of Popcorn Time hide behind the seeming near-anonymity of their actions and with the knowledge that as their numbers grow, through heard defense, it is harder and harder for rights holders like plaintiff to catch any single infringer.

Each of the defendants in this action used the Internet to commit infringement through Popcorn Time, as such plaintiff only knows the defendants by his or her IP addresses, and the

---

[1] Digital Theft Deterrence and Copyright Damages Improvement Act of 1999 increased maximum damages for such conduct to $150,000 based in part on the need to deter infringers that did not believe they would be caught.  *Sony BMG Music Entertainment v. Tenenbaum*, 660 F. 3d 487, 500 ("Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct." Quoting H.R. Rep. No. 106–216 (1999).)

time of the infringement as stated in Exhibit 1 to the compliant.  An ISP uses an IP address to identify each account that is assigned to a person using the Internet through the ISP to transmit and receive data similar to the address on a house, namely it is the location to which the ISP sends data requested and from which it receives data.  Publicly available data allows plaintiff to identify the specific ISP defendants used and other information such as the city or area associated with the IP addresses.   Publicly available data generally does not permit plaintiff to ascertain the identity of the subscribers or actual defendants.  But as the ISP controls defendants' access to the Internet, so too does the ISP have the records which tie each IP address used to infringe plaintiff's rights to a specific party who contracted for service. Without this information, plaintiff cannot ascertain the identity of the defendants nor pursue this lawsuit to protect its valuable copyrights.

     Accordingly, plaintiff seeks leave to serve a Rule 45 subpoena on each ISP used by the defendants.  Such a subpoena will be limited to non-content subscriber account information such as the true name, address, telephone number, and e-mail address of the parties associated with each defendants' IP address.  Any such information obtained will be used for protecting and enforcing plaintiff's rights as set forth in the Complaint filed in this case.

     As a subscriber who contracts with and ISP may not necessarily be a defendant, plaintiff may also request leave for reasonable further discovery including an FRCP 45 deposition of the subscribers identified by the ISP of not more than two (2) hours, as may be needed to find the true identity of the actual defendants.

## II. ARGUMENT

### 1. Plaintiff's Right to Discovery

Federal Rule of Civil Procedure 26(d)(1) authorizes a court to permit discovery before the Rule 26(f) conference upon a showing of "good cause" for the party's need for expedited discovery. *See, e.g., Renaud v. Gillick*, No. 06-1304, 2004 WL 98465, at *2-3 (W.D. Wash. Jan. 8, 2007) (analyzing the Ninth Circuit standard of "good cause" and cases permitting expedited discovery); *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 280 F.R.D. 273, 276 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.")

Courts routinely allow discovery to identify "Doe" defendants operating through the Internet. See generally *Voltage, et. al v. Doe,* 3:14-cv-01241-AC, (D. OR); *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants"); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery).

Courts consider the following factors when granting motions for expedited discovery to identify anonymous internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the court can determine that the defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-580 (N.D. Cal. 1999)

First, it is highly likely plaintiff can identify the missing parties with sufficient specificity as they are each either the subscriber who contracted for use of the identified IP address, or based on the observed conduct, likely known to the subscriber. Dkt. 1. Second, though plaintiff has been able to identify much about each defendant, namely who he or she uses as his or her ISP, where he or she is generally located, and what software (Popcorn Time) he or she used to commit acts of infringement, plaintiff has no means to readily identify the Doe defendants as named individuals. Each ISP has procedures for revealing the associated subscriber information, but require a subpoena as a matter of course. Third, this is a claim for copyright infringement. Specifically, sufficient facts are alleged to support a plausible right to relief well above any general level of mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Good cause to allow expedited discovery in this case clearly exists because the ISP used to commit the acts of copyright infringement is the only source that can supply the information necessary to identify the defendant. A further basis for good cause is that in a claim for online copyright infringement there is likely irreparable harm to the copyright owner. *See UMG Recordings, Inc. v. Doe*, 2008 WL 4104214 (N.D. Cal. 2008) (Finding good cause for expedited discovery exists in Internet infringement cases, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference.)

If plaintiff is denied its subpoenas the infringers will remain hidden and defendants will be able to continue to freely infringe plaintiff's rights and commit other acts of theft with impunity. As such it is clearly in the interest of preserving justice and order that this court should grant Plaintiff's motion. *Semitool, Inc.*, 280 F.R.D. at 276 ("Good cause may be found

where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.")

    **2.   Joinder is Proper**

        a)  Elements allowing joinder exist in plaintiff's complaint.

Joinder of defendants is permissible if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." FRCP 20(a)(2). Federal Rule of Civil Procedure 1 provides that each rule should be "construed and administered to secure the just, speedy and inexpensive determination of every action or proceeding." FRCP 1. The Supreme Court has stated "joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); see also *Hagan v. Rogers*, 570 F.3d 146, 152 (3d Cir. 2009). Accordingly, the court should liberally interpret the joinder rules and apply them in the interests of fairness and justice to all parties.

The elements for permissive joinder have been met in that all of the defendants face the same claim: knowingly and willingly joining in the BitTorrent exploitation of plaintiff's motion picture through the use of the Popcorn Time software platform, which provides express notice of their infringing conduct and that their conduct will facilitate the infringing activities of others who join with them. Dkt. 1, *passim*. There are clearly commonalities in their joined, if not unified and cooperative activity. Similarly almost all defenses that might be raised by any defendant (plaintiff's ownership, facts of the complaint, investigative data, etc.) would be common to all defendants. Further, as per the express pleading, any defendant that claims prejudice in joinder will be freely severed on request. Dkt. 1, ¶ 51.

b)  Joinder, in the discretion of the court, is favored.

In similar cases, some courts permit joinder of thousands, at least in the initial stages to permit discovery. *Voltage Pictures, LLC v. Does 1-2,514*, No. 12-217 (M.D. Fl., 2012), *Maverick Entertainment Group, Inc. v. Does 1-4,350*, No. 10-569 (D.D.C., 2010). Some courts refuse to allow joinder, forcing plaintiffs to pursue infringers on an individual basis. *In Re BitTorrent Adult Film Copyright Infringement Cases,* No. 12-3995 (E.D.N.Y., 2012), *Boy Racer, Inc. v. Does 1–60*, No. 11-1738 (N.D. Cal., 2011). And some courts have limited joinder to varying degrees of commonality. *Digital Sin, Inc. v. Does 1–176*, 2012 WL 263491 (S.D.N.Y., 2012), *Raw Films v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa., 2012). There have even been contemporaneous inconsistencies in the same district. See *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161 (E.D. Mich., 2012)(Joinder found proper) and *Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich., 2012)(Joinder denied). No single issue is determinative.

Courts have tended to deny joinder in the instance of adult content, where the stigma of association makes them more susceptible to abuse. But recently courts are recognizing joinder is preferable in BitTorrent litigation for general management and economics for the courts, plaintiffs, *and* defendants when there are no other indicia of abuse. *See generally, Survivor Productions, Inc. v. Anonymous Users of Popcorn Time*, 3:15-cv-01587-AA, (D. Or. Sept. 15, 2015); *Dallas Buyers Club, LLC v. Anonymous Users of Popcorn Time*, 3:14-cv-01779-AC (D. Or. Sept. 22, 2015); *Dallas Buyers Club, LLC v. Does*, 14-cv-1684 (W.D. WA., October 31, 2014); *Dallas Buyers Club, LLC v. Does*, 14-cv-1402 (W.D. WA., September 11, 2014); *Elf-Man, LLC v. Does 1-152*, Case No. 13-cv-0507 (W.D. WA., March 26, 2013).

The determination lies with the discretion of the court and whether or not there is a common nexus of law and fact that the court deems is best managed through joinder. *United States v. Mississippi*, 380 U.S. 128, 142-142 (1965). Courts should weigh the principals of fundamental fairness to all parties examined on a case by case basis, but joinder is strongly encouraged.

        c)  Interests of justice and principals of fundamental fairness favor joinder.

Without a doubt, the enforcement of plaintiff's rights is a burden on the courts. Thousands of acts of infringement in this District, when policed as opposed to being ignored, cannot help but strain resources. However, even though justice may be difficult to administer, the difficulty should not be a barrier to relief. *Marbury v. Madison*, 5 U.S. 137 (1803). Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation. *First Time Videos, LLC v. Does 1-500,* 276 F.R.D. 241, 252-53 (N.D. Ill. 2011) ("[J]oinder at this stage is … in the interest of convenience and judicial economy [and] does not create any unnecessary delay nor does it prejudice any party. Rather, severance is more likely to likely to cause delays and prejudice [plaintiff] and future named defendants alike."); *Raw Films v. John Does 1-15*, 2012 WL 1019067 (E.D. Pa., 2012) ("consolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy.").

While the burden of the present case is very real, the burden is far less than if the cases were presented individually. The defendants presented individually would likely file the same motions to quash, have the same defenses, and there would be excessive redundancy. The savings of the plaintiff in joinder are also afforded the court. The interests of justice favor joinder.

d) In BitTorrent cases defendants' interests favor joinder.

Where the economy of joinder is rarely discussed is the benefit that is realized by the actual defendants. The Copyright Act subjects infringers to notable penalties. Civil penalties have increased to $150,000 per work in direct response to the proliferation of internet piracy. 17 U.S.C. § 504(c). The implication that a plaintiff gains unfair advantage by reducing the costs at the filing stage of these cases by only a fraction of the potential damages available for each individual case should be balanced against the real exposure of the defendants. The real exposure to most defendants are the costs and fees associated with their conduct, either their own duplicative costs and fees, or those assessed against them.

Joinder permits parties to manage cases at a reduced cost and permits a plaintiff to accept settlements in lesser amounts, particularly as costs and fees for the willful infringement through the use of Popcorn Time are properly assessed against defendants. 17 U.S.C. § 505. If plaintiff were forced to proceed against defendants individually, costs and fees (transactions costs) would be higher dictating higher settlements and greater burdens on defendants.

This is evident as often when a defendant files an answer to a single party BitTorrent case they assert an affirmative defense claiming that plaintiffs have failed to join other defendants. See *Voltage Pictures, LLC v. Blake*, 3:14-cv-1975-AC, Dkt. 21 (May 27, 2015); *Dallas Buyers Club v. Fernandez*, 3:15-cv-00444-AC, Dkt. 15 (July 9, 2015.) What is clear is that once a defendant is named, *the defendants favor joinder*.

e) Unsupported concerns for possible abuse should not trump the interests of the parties and fundamental fairness of joinder.

Plaintiff acknowledges joinder in BitTorrent actions in this District has been disfavored. In early BitTorrent related infringement actions in this District, in response to numerous

concerns and before any substantive proceedings, to address the potential for abuse Judge Aiken ordered cases be pursued against individual parties. *Voltage Pictures, LLC v. Does*, 3:13-cv-00295-AA, Dkt. 78, (May 7, 2013.).  In compliance with this directive plaintiffs have done so.  However, in part due to the increased costs associated with individual cases, defendants have since complained that individual Doe cases are even "more nefarious." *Voltage Pictures, LLC v. Revitch*, 6:14-cv-00301-AA, Dkt. 46, (January 23, 2015.)  And when a defendant answers in a single Doe BitTorrent case, plaintiffs often face the affirmative defense that they have failed to join other defendants.  See above.  It is clear that defendants' only real objection is not any perceived abuse, but that plaintiffs are legitimately enforcing their rights and defendants simply do not want to be caught.

      The concerns for abuse are real, but in response to the unfounded complaints in this District, on investigation of actual cases and conduct, there is no actual abuse. *Id.* ("… defendant only cites …another attorney in another case in another district…There is no allegation of such activity in this case."  Fn. 2.); *Elf-Man, LLC v. Does*, 6:13-cv-00331-TC (D. Or., Nov. 25, 13), ("There is no showing that plaintiff attempted to coerce an unfair settlement …"); *Voltage Pictures, LLC v. Pecsok*, 3:14-cv-01407-AC, Dkt. 30, (April 29, 2015.), ("The action was not frivolous, was motivated by Plaintiffs' desire to protect their copyright interests, and reasonably sought to recover compensation for, and deter future, copyright infringement.")

      In effect, while single party cases are always proper, and the concerns about abuse are legitimate, the result and outcome of the vast majority of the single Doe cases in this district is that defendants are successfully identified and found to be liable only to then endure the full weight of their actions in a single party case as they are assessed costs and fees when they are finally caught.  *Voltage Pictures, LLC v. Doe-50.141.97.4,* 3:14-cv-01872-AC, (April 9, 2015),

("Based on Plaintiffs' successful identification of defendants in the vast majority of the cases it has filed in 2014...."). While claims of abuse from defendants is common, those claims have been proven hollow.

The principals of fundamental fairness in this District, as evidenced by the actual cases reviewed, is that both plaintiffs *and* defendants favor joinder, with plaintiffs benefiting in the early stages of litigation and the defendants clearly benefiting, if not demanding joinder, once named.

### III.   EXPEDITED RELIEF IS PROPER

As per the activity observed associated with each defendants' IP address, there is evidence each defendant regularly and actively contributes to the BitTorrent piracy economy. The acts of the defendants do not appear to be isolated or singular in occurrence. Each defendants' IP address has been observed associated with the BitTorrent exchange of multiple files. (A record of such activity is available should the Court deem such properly filed.) This activity is likely ongoing. If the defendants maintain plaintiff's work in a shared folder connected to the BitTorrent network and permit continued access throughout this time, the number of distributions of plaintiff's work and harm that might be attributed to defendants would be countless. However it is the experience of counsel that parties generally promptly terminate infringing activity and further distribution as soon as they have notice of an actual suit pending. As such, expedited relief is warranted such that notice may be provided to subscribers as quickly as possible to at least limit further distribution and harm to plaintiff and others.

### IV.   CONCLUSION

For the foregoing reasons, plaintiff respectfully requests the Court grant its *ex parte* Motion for leave to take discovery prior to the Rule 26 conference and enter an Order allowing

plaintiff to subpoena records from the ISPs for the identity of the account holders assigned to the defendants' IP addresses as identified in Docket Entry 1-1, Exhibit 1 to the Complaint and for such further reasonable discovery as may be needed.

DATED: October 22, 2015.

> /s/Carl D. Crowell
> Carl D. Crowell, OSB No. 982049
> email: carl@crowell-law.com
> Drew P. Taylor, OSB No. 135974
> email: drew@crowell-law.com
> (503) 581-1240
> Of attorneys for the plaintiff